**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**FIREMAN'S FUND INSURANCE COMPANY,**

Plaintiff,

and

**TRAVELERS INDEMNITY COMPANY, AMERICAN ECONOMY INSURANCE COMPANY, AMERICAN INTERNATIONAL RECOVERY, INC., and HOME VIDEO OF MINNEAPOLIS, INC.,**

Plaintiff-Intervenors,

v.

**CANON U.S.A., INC.,**

Defendant.

Civil No. 01-1954 (DSD/JGL)

**ORDER**

APPEARANCES

Patrick Hess, Esq., for Plaintiff Fireman's Fund Insurance Company

Michael Rowley, Esq., for Plaintiffs American Economy Insurance Company and Home Video of Minneapolis

Robert W. Cockerham, Esq., for Plaintiff Travelers Indemnity Company

Jason M. Hiveley, Esq., for Plaintiff American International Recovery, Inc.

Timothy E. Branson, Esq., and Dean C. Eyler, Esq., for Defendant Canon U.S.A., Inc.

FILED 8-21-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on August 20, 2002 on Defendant's Motion for a Protective Order Precluding Certain Destructive Testing and to Compel Answers to Discovery and Production of Privilege Logs (Doc. No. 38). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

On October 16, 2000, an extensive fire occurred at a shopping center located at 80 North Snelling Avenue in St. Paul, Minnesota. The fire originated in a Home Video store and caused damage to several stores and to the shopping center. Several different fire insurers paid covered losses to store and mall owners. The insurers, Plaintiffs Fireman's Fund Insurance Company, Travelers Indemnity Company, American Economy Insurance Company, American International Recovery, Inc. (collectively, along with Home Video of Minneapolis, Inc., "Plaintiffs") brought suit against Defendant Canon U.S.A., Inc. ("Canon"), alleging that design and manufacturing defects in a Canon copier caused the fire.

## I. DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Canon wants to preclude Plaintiffs from conducting destructive testing on the Fixing Assembly Thermal Cutout ("Fixing Assembly TCO") located in the Canon NP6016 copier removed from the Home Video store.

Plaintiffs want to perform the testing to determine whether the Fixing Assembly TCO opened due to the heat of the fire or because of an electrical load or current in the assembly. Plaintiffs contend that previous visual inspections did not reveal microscopic evidence such as pitting, jagged marks, or evidence or arcing, which could be evidence that the Fixing Assembly TCO failed and started the fire.

The parties agree that whether to allow destructive testing of an item removed from a fire or accident scene is determined by balancing the need for such testing against the costs of altering critical evidence. See Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 419 (D. Minn. 1988); Hawthorne v. Michelin Tire Corp., Nos. 95-15742, 95-15743, 1996 WL 640481, at **3-4 (9th Cir. Nov. 5, 1996). The Court finds that the destructive testing is necessary to Plaintiffs' theory of the case. Canon's expert is expected to testify that the x-rays taken during a previous inspection show a "clean break" with no pitting, jagged marks, or arcing, which would signify that the Canon copier did not start the fire. However, Plaintiffs' expert, Beth Anderson, asserts that the x-rays are not detailed enough to show such small features. Anderson will need to perform a microscopic analysis, partially destructive in nature, on the Fixing Assembly TCO to determine whether any pitting, jagged marks, or arcing exists. This determination is central to the pivotal issue in this lawsuit: whether the Fixing

Assembly TCO opened due to the heat of the fire or because of an electrical load or current in the assembly.[1]

On the other hand, the harm to Canon of altering the evidence is not insignificant. According to Canon, the testing would destroy irreplaceable graphic evidence that the copier is not the cause of the fire. Specifically, Canon is concerned that the testing will destroy the fixing film within the Fixing Assembly TCO. Canon's expert, William Friganza, explains that the film is largely intact, which is "powerful and graphic" evidence that the fire did not start internally. However, while it is true that the Fixing Assembly TCO will be disassembled to a certain extent, only a small part of the fixing film will need to be cut and removed for testing. The Fixing Assembly TCO can likely be reassembled afterwards. Furthermore, the inspection and testing will be videotaped and photographed, preserving the character of the fixing assembly and the state of the fixing film. Finally, Canon's experts will be present for the

[1] Canon makes a persuasive argument that Anderson's affidavit does not establish or even assert that, in her opinion, the Fixing Assembly TCO caused the fire. Canon urges the Court to require Anderson to disclose her opinion by the September 1, 2002 deadline, and if the opinion surmises or concludes that the Fixing Assembly TCO caused the fire, Plaintiffs can then bring a motion requesting the destructive testing. First, this proposed solution will delay discovery in this case even longer than if the Court merely denies the current motion and allows the testing to proceed. Second, after having been given a roadmap as to precisely what their expert would need to attest, there is no doubt that Plaintiffs would be able to provide a satisfactory affidavit from Anderson establishing need for the testing. Thus, to adopt Canon's suggestion would be to delay the inevitable.

inspection and will have an opportunity to provide input on protocol. These precautions will permit Canon to argue at trial that the fixing film was largely intact, and therefore that the Fixing Assembly TCO could not have caused the fire, and to support this argument with visual evidence.

In conclusion, the Court finds that the testing could reveal whether the fire was started by the Canon copier. Plaintiffs' need to obtain such critical evidence outweighs Canon's desire to present unaltered evidence at trial. Canon's motion for a protective order is denied.

## II. AMENDMENT OF THE PRETRIAL SCHEDULE

In Plaintiffs' memorandum in opposition to Canon's motion, Plaintiffs asked the Court to move the deadline for expert disclosures from September 1, 2002 to November 1, 2002 in the event the Court denied Canon's motion for a protective order. The proper procedure would have been for Plaintiffs to formally move for amendment of the scheduling order and, preferably, for the parties to agree to have the Court hear Plaintiffs' motion at the same time as Canon's motion. However, the Court will nevertheless consider the request because Canon did not disagree with the necessity of the amendment at the hearing. Although Plaintiffs submit that only the expert disclosure deadlines need be moved, Canon persuasively argues that all remaining dates in the pretrial schedule should be extended by two months. The pretrial schedule is therefore amended as follows: Plaintiffs shall disclose

all expert witnesses and reports by November 1, 2002; Canon shall disclose all expert witnesses and reports by December 1, 2002; all rebuttal expert witnesses shall be disclosed by January 1, 2003; the discovery period closes February 1, 2003; all non-dispositive motions must be filed prior to April 1, 2003; dispositive motions must be noticed, served, and filed prior to May 1, 2003; and this case will be considered ready for trial as of June 1, 2003.

## III. DEFENDANT'S MOTION TO COMPEL

The first discovery request at issue asks Plaintiffs to identify the design and manufacturing defects they claim existed in the copier. Plaintiffs objected on the grounds that the interrogatory called for expert opinions and sought information protected by the attorney-client privilege and the work product doctrine. As to the latter objection, Plaintiffs have agreed to provide privilege logs to Canon, detailing the bases for asserting the privileges. Canon accepted this representation at the hearing, and Plaintiffs are therefore ordered to provide the privilege logs to Canon no later than Wednesday, August 28, 2002. With respect to the former objection, the Court finds that Canon is entitled to know the results of investigations conducted by or on behalf of the insurers in the ordinary course of business and the purely factual bases of Plaintiffs' claims. See Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160, 164 (D. Minn. 1986). Notwithstanding Plaintiffs' unsubstantiated assertion to the contrary, the Court finds that the discovery rules of Mission apply to this case

even though Plaintiffs' position is not similar to the insurance companies in Mission. While Plaintiffs need not disclose the results of expert testing or their experts' opinions prior to November 1, 2002, they must provide Canon with non-expert, factual information regarding their theory of the case. The Court is sympathetic to Canon's argument that fact discovery cannot go forward effectively until Canon knows which design and manufacturing defects are at issue. Canon's motion is granted with respect to this discovery request.

The second discovery request asks Plaintiff Fireman's Fund to state all bases for its allegations contained in paragraphs 22-29 of the Complaint. Fireman's Fund responded with the same objections recited above. For the reasons discussed above, Canon's motion is granted with respect to this request to the extent defined above. Additionally, Fireman's Fund need not provide purely expert discovery, and it must also provide a privilege log by Wednesday, August 28, 2002.

The third discovery request at issue asks the insurer-Plaintiffs to provide documents setting forth policies and procedures with respect to investigation of fires or the pursuit of funds as a subrogee. Plaintiffs objected on numerous grounds. At the hearing, counsel for one of the insurance companies represented that the company had no such written policies or procedures. If true, then such information clearly cannot be produced. However, if the policies and procedures exist, the Court finds they are relevant

and not privileged and must be produced. It is noteworthy that Plaintiffs failed to specifically address this discovery request in their memorandum or at the hearing; thus, there have been no arguments that the documents are irrelevant or privileged on which the Court could found a denial of this request.

The final discovery request at issue seeks copies of contracts between Plaintiff American International Recovery and the New Hampshire Insurance Company. According to Canon, American International claims to have standing from acquiring the subrogation rights of the New Hampshire Insurance Company, but it refuses to produce written evidence demonstrating such standing. The Court finds this information relevant and orders it to be produced. Moreover, American International did not explain how documents responsive to this particular request would be privileged, which was the basis for its objection.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Defendant's Motion for a Protective Order Precluding Certain Destructive Testing and to Compel Answers to Discovery and Production of Privilege Logs (Doc. No. 38) is **DENIED** as to the protective order and **GRANTED** as to discovery as set forth fully in the body of this Order.

(2) Plaintiffs must provide privilege logs to Canon no later than Wednesday, August 28, 2002, and must produce the discovery ordered by Friday, September 20, 2002.

(3) The pretrial schedule is amended as follows: Plaintiffs shall disclose all expert witnesses and reports by November 1, 2002; Canon shall disclose all expert witnesses and reports by December 1, 2002; all rebuttal expert witnesses shall be disclosed by January 1, 2003; the discovery period closes February 1, 2003; all non-dispositive motions must be filed prior to April 1, 2003; dispositive motions must be noticed, served, and filed prior to May 1, 2003; and this case will be considered ready for trial as of June 1, 2003.

Dated: August 20, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge